## No. 25-2074

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

**United States of America**

      Plaintiff-Appellant,

v.

**Komiljon Toirov**

      Defendant-Appellee.

## Defendant-Appellee's Response-No Attachments

On Appeal from the United States District Court
For the District of New Mexico
The Honorable Sarah M. Davenport, presiding.
District Court No. 2:25-CR-1801-SMD

### ORAL ARGUMENT IS REQUESTED

Amanda Skinner
Attorney for Appellee
Federal Public Defender
District of New Mexico
506 S. Main Street, Suite 400
Las Cruces, N.M. 88001
575.527.6930
amanda_skinner@fd.org

**July 22, 2025**

# TABLE OF CONTENTS

**PAGE**

TABLE OF CASES AND OTHER AUTHORITIES…………………………iii

STANDARD OF REVIEW…………………………………………………..1

SUMMARY OF THE ARGUMENT……………………………………………1

STATEMENT OF THE CASE AND FACTS………………………………….3

ARGUMENT……………………………………………………………………7

    I.    The Bail Reform Act Requires Mr. Toirov's Release…………….7

    II.   § 797 Requires, at a Minimum, Knowledge of NDA Land……………………………………………………………10

    III.  § 1382 Requires, at a Minimum, Knowledge of NDA Land……………………………………………………………14

    IV.  Mr. Toirov's Guilty Plea to Improper Entry Cannot Satisfy the *Mens Rea* elements of § s 797 and 1382…………………..…19

    V.   The Rule of Lenity Should Apply……………………………...23

CONCLUSION………………………………………………………………24

TYPE-VOLUME CERTIFICATION……………………………..………..26

CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION…………26

# TABLE OF CASES AND OTHER AUTHORITIES

## TABLE OF CASES

**PAGE**

*Arizona v. United States*
    567 U.S. 387, 407 (2012)…..…………………………………………..21

*Bryan v. United States*
    524 U.S. 184 (1998)……………………………………………11, 12

*Estate of McMorris v. C.I.R.*
    243 F.3d 1254, 1258 (10th Cir. 2001)…………………………...17

*Lincoln v. BNSF Ry. Co.*
    900 F.3d 1166 (10th Cir. 2018)…………………………………1

*Seneca-Cayuga Tribe of Okla. V. Nat'l Indian Gaming Comm'n*
    327 F.3d 1019 (10th Cir. 2003)…………………………………...13

*TRW Inc. v. Andrews*
    534 U.S. 19 (2001)…………………………………………………10

*United States v. Ailon-Ailon*
    875 F.3d 1334 (10th Cir. 2017)………………………………...8, 9

*United States v. Cisneros*
    328 F.3d 610, 613 (10th Cir. 2003)……………………………….9

*United States v. Cottier*
    759 F.2d 760 (9th Cir. 1985)……………………………………16

*United States v. Doby*
    928 F.3d 1199 (10th Cir. 2019)………………………………….1

*United States v. Floyd*
    477 F. 2d 217 (10th. Cir. 1973)…………………….……..14, 15, 16

*United States v. Gaspar-Miguel*

947 F.3d 632 (10th Cir. 2020)…………………………………………22

*United States v. Madrigal-Valadez*
561 F.3d 370 (4th Cir. 2009)……………………………………..…14

*United States v. Nunez-Soberanis*
406 F.Supp.3d 835 (S.D. Ca. 2019)……………………………....20, 21

*Unites States v. Ruiz-Gea*
340 F.3d 1181 (10th Cir. 2003)……………………………………24

*United States v. Salerno*
481 U.S. 739, 747 (1987)……………………………………………...7

*United States v. United States Gypsum Co.*
438 U.S. 422 (1978)……………………………………………….....4

## TABLE OF OTHER AUTHORITIES

### <u>PAGE</u>

8 U.S.C. § 1302……………………………………………………21

8 U.S.C. § 1325………………………………………...3, 4, 5, 10, 19, 20, 21

18 U.S.C. § 1382………………………3, 5, 6, 10, 11, 12, 13, 14, 19, 20, 24

18 U.S.C. § 3142(f)…………………………………………………7

18 U.S.C. § 3142(f)(2)………………………………………………...9

18 USC § 3142(g)(1)-(4)……………………………………………7

18 USC § 3142(g)(2)………………………………………………25

50 USC § 797……………………………...3, 6, 7, 10, 11, 12, 13, 14, 19, 20, 24

Army Regulation 190-13…………………………………………13

Fed. R. Crim. P. 11(b)(3)……………………………………………..6

Tenth Cir. Crim. Jury § 1.38…………………………………………11, 12

## STANDARD OF REVIEW

This Court applies "de novo review to mixed questions of law and fact concerning a district court's detention or release decision, but [accepts] the district court's findings of historical fact which support that decision unless they are clearly erroneous." *United States v. Doby*, 928 F.3d 1199, 1202 (10th Cir. 2019) (cleaned up).

## SUMMARY OF THE ARGUMENT

To reverse an order of release, the Government must overcome the findings of fact and conclusions of law made by the district court. The decision to release Mr. Toirov rested on two grounds: 1) he was not a flight risk; and 2) the weight of the evidence was not strong. A1.44-45[1].

The Government does not address the decision that Mr. Toirov was not a flight risk. This Court may "affirm on any ground supported by the record, so long as the appellant has had a fair opportunity to address that ground." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1180

---

[1] Citations to the Government's appendices will take the following form: A1.#. The first number after "A" refers to the appendix volume on appeal, with the following number indicating the page number. Mr. Toirov filed a supplemental appendix, which will be referenced as "SA" using the same format.

(10th Cir. 2018). This Court can affirm solely because the Government did not dispute that Mr. Toirov was not a flight risk.

But additionally, the Government is unable to meet its burden of proof as to both charges levied against Mr. Toirov. Both charges, in addition to other elements, require the Government to prove beyond a reasonable doubt that Mr. Toirov knew he entered a National Defense Area ("NDA"). The Government concedes Mr. Toirov had no notice he was about to enter an NDA but urges this Court to find a conviction for improper entry supplies any necessary *mens rea* as to both pending charges.

When confronted with this issue in Mr. Toirov's case, both the Magistrate Judge and District Court Judge released Mr. Toirov on the pending charges, thus rejecting the Government's argument that the *mens rea* as to  each statute simply requires proof of an improper entry.[2] This Court should affirm because the district court correctly determined the Government is unable to meet the threshold *mens rea* requirement of each statute because the Government fails to establish

---

[2] By information and belief, every Magistrate Judge in Las Cruces, New Mexico, has determined release is appropriate in similar situations.

Mr. Toirov is a flight risk and concedes it has no evidence Mr. Toirov

knew he allegedly entered NDA land.

## STATEMENT OF THE CASE AND FACTS

The Government recently began filing criminal charges in the

District of New Mexico alleging trespassing into a military zone

pursuant to 50 U.S.C. § 797 and/or 18 U.S.C. § 1382 ("the NDA

charges") for nearly every individual also charged with improper entry

under 8 U.S.C. § 1325.[3]

At initial appearances on April 30, 2025, the duty Assistant

Federal Public Defender ("FPD") moved to dismiss all NDA charges

pursuant to § 797[4]. The court denied the motion, and the duty FPD

---

[3] The Government's brief includes a' "background" section devoted to a
discussion of how the land in question was previously used and why the
executive branch felt it necessary to take the land at issue and attempt
to make it a noncontiguous extension of Fort Huachuca in Arizona. This
information is irrelevant to the Government's bail appeal, which turns
on whether the Government has a strong case against Mr. Toirov or, as
the district court found, no case at all. *See* A1. 44-45 (District Judge's
Order, incorporating by reference, the Chief Magistrate Judge's order
dismissing the NDA charges against Mr. Toirov and thoroughly
dismantling the Government's arguments that it bears no burden of
proof as to *mens rea* for either count, beyond that of a showing of an
improper entry by a defendant.)

[4] On this date, the Government had not yet begun charging violations of
Section 1382.

3

continued to make unsuccessful oral motions to dismiss at the initial appearance dockets.

Recognizing a simmering issue, the Chief Magistrate Judge, who was assigned initial appearances beginning May 1, 2025, issued an Order for Briefing directing the United States to assert with supporting legal authority, its position as to the appropriate *mens rea* standard for both NDA charges. 2A.4-5. The Order allowed the defense community to respond, and the Las Cruces members of the CJA panel elected to join the FPD's response. *Id.* at 5, 20.

The Government's response argued any *mens rea*, as to both charges, was supplied by a defendant's conduct amounting to an improper entry under § 1325. The defense argued the NDA charges required the Government to prove that, at a minimum, a defendant knew they stepped into the New Mexico National Defense Area ("NDA"). The defense further argued both statutes have specific and unambiguous *mens rea* requirements that are deeply rooted in Anglo-American criminal jurisprudence, which cannot be conveniently avoided through sleight-of-hand arguments. *See United States v. United States Gypsum Co.*, 438 U.S. 422, 436 (1978) ("The existence of a *mens rea* is

4

the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence").

In early May, Mr. Toirov was arrested and charged with three charges via complaint after he was encountered by Border Patrol Agents in Dona Ana County, New Mexico: improper entry under § 1325, violating a security order under § 797, and entering military property in violation of § 1382. A1.7. Mr. Toirov's initial appearance was not held as scheduled, likely because Mr. Toirov needed the assistance of an Uzbek interpreter. *Id.* at 3-4.

On May 19, 2025, the Chief Magistrate Judge completed his probable cause review in Mr. Toirov's case and dismissed both NDA charges after determining they were, in fact, unsupported by probable cause.[5] *Id.* at 10-25. Undeterred, the Government filed the NDA charges against Mr. Toirov again using an information, thus cutting off another probable cause review by the court. *Id.* at 26-27.

---

[5] While Mr. Toirov disagrees with the Chief Magistrate Judge's conclusion that an improper entry proves he knew his conduct was unlawful, Mr. Toirov agrees with the Chief Magistrate Judge's conclusion the Government must prove knowledge of NDA land as an element under each statute. A1.19, 24 (determining both § 797 and §1382 require the Government to prove a defendant knew he was entering NDA land).

Mr. Toirov pled guilty to the improper entry charge at his initial appearance ten days later. *Id*. at 4. The Government did not oppose the time-served sentence requested by Mr. Toirov. *Id*. The court imposed a time-served sentence and heard bond arguments on the remaining NDA charges.[6] *Id*. The court released Mr. Toirov, and the Government appealed the release order to the district court. *Id*. at 4, 28-29.

At the hearing on the bail appeal, the Government conceded it was "not arguing dangerousness or a dangerous criminal history" and that there was no information that Mr. Toirov "knew that this [land] was an NDA." 3A. 10, 20. The district court adopted the Chief Magistrate Judge's "reasoning and conclusions of law in the Order Dismissing Charges in this case" and specifically noted the Government's argument that the willfulness requirement of § 797 could be sufficiently shown by

---

[6] By information and belief, every Magistrate Judge in the District of New Mexico has refused to accept a guilty plea on an NDA charge for a defendant who has no prior NDA convictions or earlier NDA charges pending against them in New Mexico or another border district. By information and belief, this is based on the Magistrate Judges' sound judgment that to do so would violate their Rule 11 duty to "determine there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3); *see also* A1. 11 (Chief Magistrate Judge's order dismissing counts 2 and 3 and noting "for both probable cause review and the Court's Rule 11 obligations, conclusions about the requisite elements of charged crimes are essential.").

Mr. Toirov's improper entry into the United States was "unpersuasive."
A1. 44-45. The district court found "the weight of the United States'
evidence in this case is not strong and does not weigh in favor of
detention" and ordered Mr. Toirov released on his own recognizance. *Id*.
at 45. The Government timely appealed. *Id*. at 46.

<u>**ARGUMENT**</u>

I.     **The Bail Reform Act Requires Mr. Toirov's Release.**

"The Bail Reform Act carefully limits the circumstances under which
detention may be sought to the most serious of crimes." *United States v.
Salerno*, 481 U.S. 739, 747 (1987); *see* 18 U.S.C. § 3142(f) (detention
hearings available if case involves crimes of violence, offenses for which
the sentence is life imprisonment or death, serious drug offenses, or
certain repeat offenders). "In our society liberty is the norm, and
detention prior to trial or without trial is the carefully limited
exception." *Salerno*, 481 U.S. at 755.

In determining whether release is appropriate, the court is required
to consider:

> (1)the nature and circumstances of the offense charged[…];
> (2)the weight of the evidence against the person;
> (3)the history and characteristics of the person […], and

(4)the nature and seriousness of the danger to any person or the community that would be posed by the person's release.[…].

18 USC § 3142(g)(1)-(4).

The Government argues Mr. Toirov's detention is appropriate because he is a flight risk and that "under a correct view of the *mens rea* requirements, the evidence in support the NDA charges" is strong. Gov.Br.6. "The Government bears the burden of proving a defendant is a flight risk by a preponderance of the evidence." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017).

At the bail appeal hearing, the Government made unsupported accusations that Mr. Toirov would flee if released. *Id.* at 41-42 (Government arguments on flight risk included "the reason he came here was to remain undetected"; "he knows that he would almost certainly be convicted of this offense, in light of the weight of the evidence"; and "the I-213 says that he was going—that there were relatives here. And so we presume he was probably going to see relatives."). The district court summarized the Government's argument on flight risk as "basically saying the defendant entered illegally and has pled guilty, the nature and circumstances of these remaining

offenses weigh against the defendant because he may sneak off and not comply[.]" A3.10. When pressed by the district court, however, the Government conceded Mr. Toirov was unlikely to be released to the community even if released on the NDA charges because he would most likely be detained, at least initially, pursuant to an immigration detainer.[7] *Id.* at 43.

The district court's findings that release was appropriate and that there was no "information to show that conditions" of release were even necessary are not clearly erroneous on this record. *Id.* at 47; (stating this Court accepts "the district court's findings of historical fact which support that decision unless they are clearly erroneous." *United States v. Cisneros*, 328 F.3d 610, 613 (10th Cir. 2003). These findings, along with the Government's concession it had nothing to present on dangerousness and the weakness of the Government's case on the NDA charges, are enough to uphold the release order in this case. *See id.* 10-

---

[7] While it is possible Mr. Toirov could fail to appear for trial because he is removed from the United States by immigration authorities, this does not factor into this Court's analysis of flight risk. *See Ailon-Ailon*, 875 F.3d at 1341(holding that, "in the context of § 3142(f)(2), the risk that a defendant will "flee" does not include the risk that ICE will involuntarily remove the defendant.").

11; *see also* 18 USC § 3142 (b)(c) (stating the judicial officer "shall" order pretrial release on personal recognizance "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.").

## II.   **50 USC § 797 REQUIRES, AT A MINIMUM, KNOWLEDGE OF NDA LAND.**

The district court correctly determined the Government could not meet its burden to prove the willfulness requirement under § 797. A1.45 (finding "unpersuasive the United States' argument that the willfulness requirement of 50 U.S.C. § 797 can be sufficiently shown by Defendant's simultaneous illegal entry into the United States in violation of 8 U.S.C. § 1325.").

50 USC § 797 states "Whoever willfully violates any defense property security regulation shall be [fined or imprisoned]." 50 U.S.C. § 797. "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). Yet, the Government's position ignores this basic cannon.

First, the Government posits that a defendant need not know he was violating a defense property security regulation. Gov.Br.12-13. According to its reading of the statute "[a] defendant who knows that he is acting unlawfully need not grasp every reason why his conduct is unlawful—*e.g.*, the existence or details of the 'defense property security regulation' he is violating." Gov.Br.10-11. But the plain language of § 797 refutes this assertion as. The statute explicitly requires that "[a]ny regulation or order covered by sub § (a) shall be posted in conspicuous and appropriate places." 50 USC § 797(b). If no knowledge of the existence of the regulation was required, there would be no need to post it or otherwise advertise that a regulation covers the land in question and subsection (b) of § 797 would be wholly superfluous.

Second, "in the criminal context, a 'willful' act is one undertaken with 'bad purpose.'" *Bryan*, 524 U.S. at 191. Thus, the Court must discern what "bad purpose" the accused must have at the time they "violate any defense property security regulation." *See* 50 U.S.C. § 797. It should be uncontroversial to assert it is impossible to have a bad purpose connected to violating a security regulation without first, at a

11

minimum, understanding you are entering an area covered by a regulation.

The Tenth Circuit Pattern Criminal Jury Instructions suggest that "when a statute uses [willfully], care should be taken to distinguish between its meanings. A 'willfulness' requirement may impose on the Government the burden of proving that the defendant had knowledge of his conduct, or that his conduct was unlawful, or of the precise legal duty, the violation of which forms the substance of the charges against the defendant." Tenth Cir. Crim. Jury § 1.38.

While "willful" does not always trigger a specific intent requirement, the term "differentiates between deliberate and unwitting conduct, but in the criminal law it also typically refers to a culpable state of mind." *Bryan*, 524 U.S. at 191.

In applying these well-established standards to § 797, the statute plainly requires the Government to prove that Mr. Toirov acted with the specific intent to violate a specific security regulation. That is, the statute requires that a person "willfully violate" a certain subset of regulations: those that protect defense property security.  Because a person must "willfully violate" such a regulation, they must not only act

12

with some nefarious intent, but that nefarious intent must also be directed at violating a specific defense property security regulation. The Army adopts these principles and specifically notes in the Army Physical Security Program materials that "[f]ailure to to post conspicuous signs and notices to give persons approaching a restricted area actual knowledge of the restriction may hamper any resulting legal procedure."[8] AR 190-13 at 6-7(b).

The statute's specific focus on "defense property security regulation[s]" to the express exclusion of other forms of regulations is also illustrative. It is a long established and familiar maxim of statutory interpretation that "the enumeration of certain things in a statute suggests that the legislature had no intent of including things not listed or embraced." *Seneca-Cayuga Tribe of Okla. V. Nat'l Indian Gaming Comm'n*, 327 F.3d 1019, 1034 & n.24 (10th Cir. 2003). If Congress had intended for § 797 to apply to acts other than those directed toward

---

[8] Mr. Toirov does not allege a failure to post signs results in an automatic win for a defendant-someone could have knowledge of an NDA even without posted signs. However, the regulations' reference to signage is relevant because it highlights the Army's understanding that a would-be-trespasser must have actual knowledge they are approaching a restricted area if charges will be pursued.

13

willful violations of defense property security regulations, it would have said so. The statutes' failure to include any subsection of regulations or laws (i.e., immigration offenses) other than defense security regulations unambiguously limits the statute to only "defense property-security regulation[s]." 50 U.S.C. § 797.

III.  **18 USC § 1382 REQUIRES, AT A MINIMUM, KNOWLEDGE OF NDA LAND.**

The Government's inability to prove Mr. Toirov had knowledge he was approaching an NDA also derails their attempt to prosecute a violation under § 1382.  The statute applies to anyone who "within the jurisdiction of the United States, goes upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation[.]" 18 U.S.C. § 1382. Similar to its arguments regarding § 797, the Government argues that an improper entry automatically supplies any *mens rea* necessary to prove the individual went upon the NDA for a prohibited purpose, and that there is no notice requirement. Every Circuit, including this one, that has considered § 1382 has "concluded that notice is a necessary element of § 1382 when the indictment alleges that the accused violated an entry requirement." *United States v.*

14

*Madrigal-Valadez*, 561 F.3d 370, 374 (4th Cir. 2009); *United States v. Floyd*, 477 F.2d 217 (10th Cir. 1973).

At the outset, the Government ignores the fact that § 1382 is plainly designed to punish those who act with the specific intent to trespass upon military property and then commit some other offense. For example, a person who purposefully enters military property for the purpose of committing a burglary could be convicted under § 1382, but only if the Government proves that the individual: (1) intended to trespass upon the military property specifically; and (2) that their illegal trespass was done specifically in furtherance of the inchoate burglary offense.

Even if a completed improper entry offense provides evidence of an intent to enter military land with a prohibited purpose, this Court has interpreted § 1382's "prohibited purpose" language as being directly tied to a knowledge and/or notice requirement. *See United States v. Floyd*, 477 F.2d 217 (10th Cir. 1973). In *Floyd*, the defendants were charged after entering a military base to protest the Vietnam War. *Id.* at 225. When the group crossed a white line signifying the entrance to the base, a Lieutenant Colonel met them and read a statement telling

them they "were trespassing" and warning them they would be arrested and prosecuted under § 1382 if they did not comply. *Id.* at 220.

The record established that protesters did not qualify as visitors, so the intent to protest was the prohibited purpose. *Id.* at 221. In addition, the defendants had ample warning not to enter because base personnel attempted to hold the group back and told them they were not allowed to enter without permission of the base commander. *Id.* at 221, 224.

The defendants in *Floyd* argued that the Government presented no evidence of their purpose or intent to enter the base without permission for a prohibited purpose. *Id.* at 225. This Court upheld the convictions on the grounds that the warning sign posted at the entrance to the base was visible to anyone who walked or drove onto the base and stated that permission to enter is required. *Id.* ("In lieu of obeying [the warnings], they sat down and refused to leave. They carried placards protesting the war in Vietnam. Their intent to enter the base without permission and their intent to demonstrate against the Vietnam war on the base may be reasonably inferred from these facts.").

16

"Where entry alone is the basis of the violation," the Government must prove only that the defendant knew that "the entry [was] unauthorized." *United States v. Cottier*, 759 F.2d 760, 762 (9th Cir. 1985). So, even if Mr. Toirov is charged under a theory of entry alone, the Government must still prove Mr. Toirov knew his entry on the NDA was unauthorized.

To know the entry was unauthorized, Mr. Toirov had to know he was entering NDA land. Signage, along with the location of Mr. Toirov's entry in relation to any signage, is critical to Mr. Toirov, and any defendant's, defense of the NDA charges.[9] On May 2, 2025, undersigned counsel made an emergency discovery demand at initial appearances to

---

[9] The defense doubts the Government can produce a witness who can testify a specific portion of land Mr. Toirov walked on was, in fact, part of an NDA at that specific moment in time, as the Government has recently conceded, in a separate case, that it was mistaken as to what areas of land the NDA encompasses. *See* United States' Response to Court's Oral Order (explaining that defendant's case was dismissed because "the United States Attorneys Office learned from the United States Border Patrol that portions of the international border previously understood as encompassed by the NM NDA were not, in fact, transferred to the jurisdiction of the Department of the Army.") *United States v. Pascual Jimenez-Santiz*, No. 2:25-cr-1047 GBW (Doc. 11); *see also Estate of McMorris v. C.I.R.*, 243 F.3d 1254, 1258 n. 8 (10th Cir. 2001) (explaining that this Court can take judicial notice of documents and docket materials filed in other courts).

determine what, if any, signage was placed upon the newly erected

military land along the New Mexico and Mexico border.

    While the court denied the specific discovery demand, the

Government did coordinate a visit to a portion of the border for

undersigned counsel and her colleagues on May 8, 2025. It was readily

apparent to undersigned counsel that the location of the signage is

wholly inadequate to inform anyone approaching the alleged military

land from either side of the border that they are entering the space

prior to entering it. *See* SA.3-4. (Affidavit from Federal Defender

Investigator, explaining the locations of the signs observed on May 8,

2025).

    The Government has hinted its' "interest" in this appeal rests on

the obvious fact that someone who doesn't read English or Spanish can't

read a sign written in English or Spanish. *See* A3.20 (at the hearing on

the bail appeal, the Government states it "easily concedes" Mr. Toirov

had no notice he was entering military property and further states

"that's one of the reasons the Government is interested in this

appeal[.]"). But even English and Spanish speakers don't have notice

they are entering an alleged NDA when the Government chooses to put

the signs outside the NDA in question, so an individual could only read them once they have exited the alleged NDA.

## IV. MR. TOIROV'S GUILTY PLEA TO IMPROPER ENTRY CANNOT SATISFY THE *MENS REA* ELEMENTS OF §§ 797 AND 1382.

The Government argues that its case against Mr. Toirov is strong because Mr. Toirov's improper entry into the United States supplies the necessary *mens rea* as to both NDA charges. Gov. Br. 16; *see also id.* at 6 (arguing culpable purpose "could be proven by showing that the defendant crossed into the United Staes in deliberate contravention of law."); 10 (arguing there is no danger of ensnaring individuals engaged in innocent conduct under the Government's theory because Mr. Toirov "knew that his conduct was unlawful."); and 11 ("arguing virtually all aliens who enter the NDA are not engaged in apparently innocent conduct.").

To secure the improper entry conviction against Mr. Toirov, the Government established Mr. Toirov intended to enter the United States and that he did not enter at a designated port of entry. 18 U.S.C. § 1325. As such, Mr. Toirov's guilty plea to improper entry did not establish that Mr. Toirov knew he was an undocumented alien or otherwise knew he did not have permission to enter the United States

19

at the location he entered. *See United States v. Nunez-Soberanis*, 406
F.Supp.3d 835, 842-45 (S.D. Ca. 2019) (holding that "[t]here is no
evidence that Congress intended to apply a scienter requirement to
Defendant's status as an alien" under § 1325). Mr. Toirov's plea to
improper entry did not constitute an admission that Mr. Toirov
knowingly acted unlawfully at any point.

Curiously, the Government acknowledges, albeit in a footnote,
that improper entry and § 797 do not share an identical *mens rea.* Gov.
Br. 11. The Government correctly notes that improper entry simply
requires the "intent to enter the United States, but not knowledge of
unlawfulness." *Id.* But the Government's proposed *mens rea* element of
§ 797 requires a heightened standard of proof for the Government to
meet - knowledge of unlawfulness.

The same analysis applies to § 1382. It cannot be disputed that §
1382 requires a person act with the "purpose" of committing a violation
of law. However, an improper entry conviction does not establish that
Mr. Toirov knew he was an undocumented alien at the time he entered
the United States. *See Nunez-Soberanis*, 406 F.Supp.3d at 842-45

20

(holding that "[t]here is no evidence that Congress intended to apply a scienter requirement to Defendant's status as an alien" under § 1325).

At a bare minimum, the purposeful requirement of § 1382 requires the Government to prove an additional element beyond that required in an improper entry case; that Mr. Toirov knew he was not allowed to enter the United States somewhere other than a port of entry. Absent such evidence, a mere conviction under § 1325 cannot alone furnish probable cause for the purposeful *mens rea* required to commit an offense under § 1382.

Moreover, Mr. Toirov completed the crime of improper entry before allegedly violating both NDA statutes. *See Arizona v. United States*, 567 U.S. at 407 ("As a general rule, it is not a crime for a removable alien to remain in the United States."); 8 USC § 1302 (requiring that aliens register *within 30 days of entry* into the United States) (emphasis added); *see also United States v. Gaspar-Miguel*, 947 F.3d 632, 634 (10th Cir. 2020)(noting that courts and the Board of Immigration Appeals have continued to interpret "enter," in a variety of contexts, as only completed once an individual is "free from official restraint.").

21

Because the crime of unlawful entry was complete at the moment of entry in this case, Mr. Toirov's presence on an alleged military instillation is not undertaken for the "purpose" of committing an additional criminal offense. Stated differently, because the offense of improper entry is completed at the point of entry, the Government must prove that Mr. Toirov possessed the subjective intent to commit an additional, inchoate, violation while present on the NDA.

Even if this Court is persuaded a conviction for improper entry *could* satisfy the *mens rea* requirements of one or both NDA charges with additional facts, there is no information in this record that supports a determination that Mr. Toirov admitted elements beyond the bare elements to establish an improper entry at his change of plea hearing. There is simply no support for the Government's repeated statements that the improper entry itself is proof Mr. Toirov knew his conduct was unlawful or that he entered the United States for a bad purpose, when neither of those alleged facts are elements of an improper entry. *See* A1.4 (docket entry for change of plea hearing stating, in relevant part: "Guilty Plea entered to Count 1 only. Defense counsel proffers for time served sentence. Government has no objection

to time served sentence."). On this record, Mr. Toirov's improper entry conviction has no bearing on the strength of the Government's case on the remaining NDA charges.[10]

## V.  THE RULE OF LENITY SHOULD APPLY.

The Government argues that charging a general intent crime such as an improper entry also allows it to file two separate charges for trespassing with no additional evidence of the defendant's willfulness, knowledge of the status of the land, or evidence of the purpose for the entry. Even if this Court is persuaded this aberrant charging scheme is

---

[10] Even if this Court determines the Government need not prove any *mens rea* beyond that which is necessary to establish an improper entry, the defense is unconvinced the Government can meet their burden as to even a basic element, like the existence of NDA land, as the Government recently failed to establish that element at the only NDA case to proceed to trial. *See* Order Dismissing Counts 2 and 3 of the Information with Prejudice in a separate case, *United States v. Luis Jesus Escobedo-Molina*, 2:25-cr-014390-MIS Doc. 23 at 15. (quoting the Chief Magistrate from audio of the only NDA case to proceed to trial in the District of New Mexico as stating that "the United States has come in here and put on not a single bit of evidence that allowed me to find that he even entered the National Defense Area, based on the witnesses I heard. And obviously I'm going to be granting directed verdict on Counts 2 and 3[.]" and further quoting the Chief Magistrate as stating that the Government's conduct was "very, very disturbing"); *see also C.I.R.*, 243 F.3d at 1258 n. 8 (explaining that this can take judicial notice of documents and docket materials filed in other courts).

allowed, the rule of lenity should apply to the Government's proposed use of both statutes.

The rule of lenity "instructs courts to interpret ambiguous criminal statutes favorably to the accused." *Unites States v. Ruiz-Gea*, 340 F.3d 1181, 1188 (10th Cir. 2003). While Mr. Toirov does not concede either statute is ambiguous, the Court could find attempts at statutory construction of both statutes leaves the Court without an answer and that the rule of lenity should apply, so that Mr. Toirov does not fact an additional 18 months of prison exposure based on his improper entry into the United States. *Muscarello v. United States*, 524 U.S. 125, 138 (1998) ("The rule of lenity applies only if, after seizing everything from which aid can be derived, ... we can make no more than a guess as to what Congress intended.") (internal quotations omitted; ellipses in the original); *see also* 50 USC § 797(a)(1) (noting a conviction exposes a defendant to up to one year of incarceration); 18 USC § 1382 (noting a conviction exposes a defendant to up to six months of incarceration).

<u>CONCLUSION</u>

The Government concedes Mr. Toirov is not a danger if released and further concedes there is no evidence Mr. Toirov knowingly entered

an NDA. And, the Government makes no argument the district court erred in determining Mr. Toirov was not a flight risk.  This Court should uphold the release order as Mr. Toirov's detention is not allowed when the Government is unable to meet the elements of the offenses charged. *See* 18 USC § 3142(g)(2) (stating the judicial officer "shall [...] take into account the available information concerning [...] the weight of the evidence against the person[.]").

Respectfully Submitted,

FEDERAL PUBLIC DEFENDER
506 S. Main Street, Suite 401
Las Cruces, NM 88001
(575) 527-6930
amanda_skinner@fd.org

s/Amanda Skinner
Amanda Skinner
Assistant Federal Public Defender
Attorney for Appellee Komiljon Toirov

## <u>CERTIFICATE OF COMPLAINCE WITH RULE 32(A)</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), I certify that this document complies with Federal Rule of Appellate Procedure 32(a)(7)(B)(ii). It is printed in Century Schoolbook, a proportionately spaced font, and includes 5200 words, excluding items enumerated in Rule 32(f). I relied on my word processor to obtain the word count.

*/s/ Amanda Skinner*
Amanda Skinner
Assistant Federal Public Defender

## <u>CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION</u>

I HEREBY CERTIFY that the foregoing brief was filed with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system on July 22, 2025.

I ALSO CERTIFY that United States Attorney Ryan Ellison, attorney for Appellant, is a registered CM/ECF user, and that service will be accomplished by the appellate CM/ECF system.

*/s/ Amanda Skinner*
Amanda Skinner
Assistant Federal Public Defender